White v. Hyde, 2016 NCBC 72.

STATE OF NORTH CAROLINA

BUNCOMBE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CVS 1330

BARBARA WHITE,

Plaintiff,

v.

CHARLES W. HYDE;
JOHN POWELL; SANDRA POWELL;
HP PROPERTIES, LLC; and
HYDE-HP PROPERTIES, LLC,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

OPINION AND ORDER ON
DEFENDANTS' PARTIAL MOTIONS TO
DISMISS

1.     **THIS MATTER** is before the Court upon Defendant Charles W. Hyde's ("Hyde") Partial Motion to Dismiss filed June 1, 2016 ("Hyde's Motion"), and Defendants John Powell ("Mr. Powell") and Sandra Powell's ("Mrs. Powell") (collectively, the "Powells") Partial Motion to Dismiss filed June 17, 2016 (the "Powells' Motion") (collectively, the "Motions") pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)") in the above-captioned case.  For the reasons stated herein, the Court hereby **GRANTS** Hyde's Motion, **GRANTS in part** the Powells' Motion and **DISMISSES without prejudice** each of Plaintiff Barbara White's ("Plaintiff") individual claims asserted against Hyde and the Powells.

2.     The Court also, for the reasons stated herein, *sua sponte* **DISMISSES with prejudice** Plaintiff's derivative claims that are purportedly asserted on behalf of Defendant HP Properties, LLC ("HP") pursuant to Rule 12(h)(3).

> *Ward and Smith, P.A., by William S. Durr and Caroline B. McLean, for Plaintiff Barbara White.*

*Cloninger, Barbour, Searson and Jones, PLLC, by John C. Cloninger, for Defendant Charles W. Hyde.*

*Long, Parker, Warren, Anderson & Payne, P.A., by Robert B. Long, Jr., for Defendants John Powell and Sandra Powell.*

Robinson, Judge.

## I.    INTRODUCTION

3.    This action arises out of the sale of a self-storage business and real property by Defendants.  Plaintiff asserts both individual claims and derivative claims on behalf of Defendants HP Properties, LLC ("HP") and Hyde-HP Properties, LLC ("Hyde-HP").

4.    Plaintiff alleges that, in 2014, Hyde and the Powells negotiated a sale of the self-storage business, EZ Storage, LLC ("EZ"), and the real property on which EZ was located for a total purchase price of $2,675,000.00.  Plaintiff challenges the allocation of the purchase price among HP, Hyde-HP, and EZ as, among other things, a breach of Hyde's and Mr. and Mrs. Powell's fiduciary duties to the companies and  fiduciary duties to Plaintiff.

5.    The Motions seek dismissal of all claims asserted by Plaintiff in her individual capacity.  Because Plaintiff's complaint fails to allege facts necessary to establish either that Hyde or the Powells owed Plaintiff a special duty or that Plaintiff suffered a separate and distinct injury apart from the LLCs, the Court concludes that the Motions should be granted and Plaintiff's individual claims dismissed.

6.    Defendants made clear at the hearing on the Motions that they were not, at this stage of the litigation, seeking dismissal of any of Plaintiff's derivative claims.

The Court thus does not consider the validity of Plaintiff's derivative claims asserted on behalf of Hyde-HP, the LLC in which Plaintiff is a 50% member. However, the Court concludes that Plaintiff lacks standing to assert any derivative claims on behalf of HP because Plaintiff is not a member of HP. Because Plaintiff lacks standing to bring derivative claims on behalf of HP, the Court lacks subject matter jurisdiction over these claims and therefore concludes that these claims should also be dismissed.

## II.    PROCEDURAL HISTORY

7.    Plaintiff instituted this action on March 24, 2016 by filing a Verified Complaint. Plaintiff named as defendants Hyde, Mr. Powell, Mrs. Powell, HP, and Hyde-HP. Although named as actual defendants, the Court notes that, because Plaintiff does not assert claims against HP or Hyde-HP, but rather asserts claims against Hyde and the Powells on behalf of the entities, their proper characterization is as nominal defendants. *See* Robinson on North Carolina Corporate Law § 17.05[2] (7th ed. 2015) ("Since a derivative action asserts a corporate claim, the corporation itself . . . is a necessary party to the action and is normally joined as a nominal defendant.").

8.    The case was designated as a complex business case pursuant to N.C. Gen. Stat. § 7A-45.4 by order of the Chief Justice of the North Carolina Supreme Court dated March 24, 2016, and was assigned to the Honorable James L. Gale by order dated March 28, 2016. The case was later reassigned to the undersigned by order dated July 5, 2016.

9.     Hyde's Motion was filed on June 6, 2016.  The Powells' Motion was filed on June 17, 2016.  Initial briefing on the Motions was completed, and the Court held a hearing on the Motions on August 3, 2016 at the Buncombe County Courthouse.

10.     Although both Motions plainly state that Hyde and the Powells "move[] to dismiss Plaintiff's claims for breach of fiduciary duty, constructive fraud, punitive damages, and unfair and deceptive trade practices," (*see, e.g.*, Hyde Mot. Dismiss 1), Hyde and the Powells made clear at the hearing that they seek dismissal of all claims asserted by Plaintiff in her individual capacity, a broader set of claims than as disclosed in the Motions.

11.     Because Plaintiff had not been afforded the opportunity to address in writing arguments against the dismissal of all of her individual claims, the Court permitted Plaintiff an opportunity to file a post-hearing supplemental brief.  Plaintiff did so on August 23, 2016, and both Hyde and the Powells filed briefs in response to Plaintiff's supplemental brief on September 2, 2016.

12.     The brief filed by the Powells on September 2, 2016 is titled "Supplemental Brief to be Treated as Supplemental Motion to Dismiss" (the "Powells' Supplemental Brief").  Therein, the Powells request that their filing "be treated as a Supplemental Motion to Dismiss made pursuant to Rules 12(b)(1) and (6), and 12(h) for lack of subject matter jurisdiction and failure to state claims upon which relief can be granted as to all purported causes of action against the Defendants Powell." (Powells' Suppl. Brief. 1.)  Plaintiff filed a response in opposition to the Powells' Supplemental Brief on September 22, 2016.

13. The Court also requested that the parties submit supplemental briefing on the applicability of the North Carolina Court of Appeals' recent decision in *Raymond James Capital Partners, L.P. v. Hayes*, No. COA15-745, 2016 N.C. App. LEXIS 819 (Aug. 2, 2016), to the issues raised by the Motions and the Court's concern that Plaintiff may lack standing to assert derivative claims on behalf of HP. This supplemental briefing was completed on August 23, 2016.

14. All briefing and argument have been completed, and the Motions are now ripe for resolution.

### III. THE PARTIES

15. The Court does not make findings of fact on motions to dismiss under Rule 12(b)(6), but only recites those factual allegations included in the Complaint that are relevant to the Court's determination of the Motions. *See, e.g., Concrete Serv. Corp. v. Investors Grp., Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986).

16. HP and Hyde-HP are both North Carolina limited liability companies. (Compl. ¶¶ 5, 7.)

17. Plaintiff is a resident of Asheville, Buncombe County, North Carolina and owns a 50% interest in Hyde-HP. (Compl. ¶¶ 1, 8.)

18. Hyde, Plaintiff's brother, is also a resident of Asheville. (Compl. ¶¶ 2, 15.) Hyde owns the other 50% interest in Hyde-HP and is the manager of that entity. (Compl. ¶¶ 21, 28.) Hyde also acts as a manager of HP. (Compl. ¶¶ 28.) Hyde is also a member of EZ. (Compl. ¶ 45.)

19. Mr. Powell owns a 25% interest in HP and is a manager of HP. (Compl. ¶ 18.)

20. Hyde-HP owns a 75% interest in HP. (Compl. ¶ 23.)

21. Plaintiff alleges that, as a result of her 50% ownership interest in Hyde-HP, and Hyde-HP's 75% ownership interest in HP, she herself effectively owns a 37.5% interest in HP. (Compl. ¶ 23.)

22. Plaintiff does not allege that Mrs. Powell owns a membership interest in HP, but Plaintiff does allege that Mrs. Powell **may have** acted as a manager of HP. (Compl. ¶ 30) (emphasis added). Plaintiff alleges that Mr. Powell and/or Mrs. Powell also acted as managers of EZ. (Compl. ¶ 31.)

## IV. FACTUAL BACKGROUND

23. In the 1990s, Wallace Hyde ("Wallace"), Plaintiff's and Hyde's father, created HP, naming himself and Mr. Powell as managers of that entity. (Compl. ¶ 15.) Wallace initially owned a 75% interest in HP, and Mr. Powell owned the remaining 25%. (Compl. ¶ 18.)

24. Around the same time, Wallace also founded EZ to operate a self-storage facility on 3.6 acres at 75 Highland Center Boulevard in Asheville, North Carolina (the "3.6 Acre Property"). (Compl. ¶ 17.)

25. At all relevant times until 2014, HP owned the 3.6 Acre Property. (Compl. ¶ 19.) EZ leased the 3.6 Acre Property from HP pursuant to a ground lease. (Compl. ¶ 20.)

26.     In 2011, Wallace created Hyde-HP, naming Hyde the sole manager. (Compl. ¶ 21.) Wallace initially owned a 50% interest in Hyde-HP, and Hyde owned the other 50%. (Compl. ¶ 21.)

27.     A few years before Wallace's death, he transferred his 50% interest in Hyde-HP to Plaintiff, making her an equal 50% owner of Hyde-HP along with her brother. (Compl. ¶ 21.) Also at some point before his death, Wallace transferred his managerial role in HP to Hyde, making Hyde the new manager of HP. (Compl. ¶ 22.) Finally, Wallace transferred his 75% ownership interest in HP to Hyde-HP, making Hyde-HP the majority owner of HP. (Compl. ¶ 23.) Wallace died on January 13, 2013. (Compl. ¶ 42.)

28.     Hyde-HP owned a 2.1 acre tract of property adjacent to the 3.6 Acre Property (the "2.1 Acre Property"). (Compl. ¶ 26.) Hyde utilized the 2.1 Acre Property for parking and various other activities associated with the EZ facility. (Compl. ¶ 26.) Hyde never sought Plaintiff's permission or obtained her consent to utilize the 2.1 Acre Property for Hyde's own personal interests, and Hyde never compensated Hyde-HP or Plaintiff for his use of the 2.1 Acre Property. (Compl. ¶ 27.)

29.     As a tenant on the 3.6 Acre Property, EZ paid HP monthly rent. (Compl. ¶ 38.) The original lease between EZ and HP, executed in 1995, provided for EZ to pay HP rent of $8,333.33 per month. Plaintiff received a portion of this monthly rent and used it to support herself financially. (Compl. ¶ 39.) However, the EZ rent checks were often late, or would not arrive, while Wallace was alive, Wallace had to intervene to ensure that Plaintiff received her share of the EZ rent. (Compl. ¶ 40.)

30.   In April 2013, Hyde unilaterally agreed, on behalf of HP, to lower the monthly rent EZ owed to HP from $8,333.33 per month to $6,666.66 per month. (Compl. ¶ 43.)  Hyde never consulted Plaintiff regarding the decrease in rent and never obtained her consent for the decrease.  (Compl. ¶ 44.)

31.   Nearly a year after the rent reduction, Hyde, acting as manager of HP and Hyde-HP, and the Powells, acting as managers of HP and EZ, negotiated a sale of EZ's assets, along with both the 3.6 Acre Property and the 2.1 Acre Property, to a third-party purchaser.  (Compl. ¶ 46.)

32.   The total purchase price was $2,675,000.00, allocated as follows: $2,500,000 to HP and EZ, and $175,000.00 to Hyde-HP.  (Compl. ¶ 47.)  HP received $1,000,000 of the $2,500,000 allocated to it and EZ, while EZ received $1,500,000.  (Compl. ¶ 48.)  This allocation was unjustified.  (Compl. ¶ 49.)

33.   No appraisal was ever commissioned for the 2.1 Acre Property.  The 2.1 Acre Property was worth far greater than the amount of the purchase price allocated to it ($175,000).  (Compl. ¶¶ 53, 54.)

34.   Plaintiff was not informed of the plans to sell the two parcels comprising the 75 Highland Center property and was not consulted in any way concerning the sale, or how the purchase price was determined or allocated.  (Compl. ¶ 57.)

35.   On December 10, 2015, Plaintiff, as a member of Hyde-HP and HP, served a formal demand letter on all Defendants as managers of Hyde-HP and HP, demanding that: (a) Hyde-HP file suit on behalf of Hyde-HP itself and as a member of HP; and (b) HP file suit on behalf of itself, to seek redress for various breaches and

unlawful actions and omissions by Hyde and the Powells. (Compl. ¶ 61.) As of the filing of the Complaint, no defendant has formally responded to the demand letter, nor agreed to file a derivative action on behalf of either Hyde-HP or HP. (Compl. ¶ 62.)

## V. LEGAL STANDARD

36. In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court reviews the allegations of the Complaint in the light most favorable to Plaintiff. The Court's inquiry is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory." *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). The Court construes the Complaint liberally and accepts all allegations as true. *Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d 858, 862 (2009).

37. Dismissal of a claim pursuant to Rule 12(b)(6) is proper "(1) when the complaint on its face reveals that no law supports plaintiff's claim; (2) when the complaint reveals on its face the absence of fact sufficient to make a good claim; [or] (3) when some fact disclosed in the complaint necessarily defeats the plaintiff's claim." *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985); *see also Jackson v. Bumgardner*, 318 N.C. 172, 175, 347 S.E.2d 743, 745 (1986); *Mileski v. McConville*, 199 N.C. App. 267, 269, 681 S.E.2d 515, 517 (2009); *Pinney v. State Farm Mut. Ins. Co.*, 146 N.C. App. 248, 253, 552 S.E.2d 186, 190 (2001). Otherwise, "a complaint should not be dismissed for insufficiency unless it appears to a certainty

that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." *Sutton v. Duke*, 277 N.C. 94, 103, 176 S.E.2d 161, 166 (1970) (emphasis omitted).

38.     The Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880 (2005). The Court can also ignore a party's legal conclusions "set forth in its pleading. *McCrann v. Pinehurst, LLC*, 225 N.C. App. 368, 377, 737 S.E.2d 771, 777 (2013).

39.     Under Rule 12(h)(3), "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." *See also* N.C. R. Civ. P. 12(b)(1).

## VI.   PLAINTIFF'S DERIVATIVE CLAIMS

40.     Hyde and the Powells made clear at the hearing that their Motions do not seek dismissal of any of Plaintiff's derivative claims asserted against any of them. Hyde and the Powells have brought their Motions separately. However, the Powells' Supplemental Brief purports to move the Court to dismiss all claims, both individual and derivative, that Plaintiff asserts against them. Additionally, as will be explained, the Court concludes that Plaintiff lacks standing to bring derivative claims on behalf of HP. For these reasons, the Court addresses Plaintiff's derivative claims first.

41.     Plaintiff attempts to assert derivative claims on behalf of both Hyde-HP and HP. Under the North Carolina Limited Liability Company Act, only "a member

may bring a derivative action." N.C. Gen. Stat. § 57D-8-01; *see, e.g.*, *Bolier & Co. v. Decca Furniture (USA), Inc.*, 2015 NCBC LEXIS 55, at \*16–17 (N.C. Super. Ct. May 26, 2015) (dismissing derivative claims where record failed to reflect that plaintiff was a member of the LLC)

42. With regard to Plaintiff's derivative claims on behalf of HP, Plaintiff admits that she is not a member of HP. Rather, she alleges that, as a result of her 50% ownership interest in Hyde-HP, and Hyde-HP's 75% ownership interest in HP, she herself effectively owns a 37.5% interest in HP. This interest, Plaintiff contends, provides standing to pursue a derivative claim on behalf of HP against Hyde and the Powells as managers of HP.

43. Plaintiff describes her claim on behalf of HP as a "double derivative" claim. As explained by the Delaware Supreme Court, "a double derivative suit is one brought by a shareholder of a parent corporation to enforce a claim belonging to a subsidiary that is either wholly owned or majority controlled." *Lambrecht v. O'Neal*, 3 A.3d 277, 282 (Del. 2010). Delaware law recognizes the right of a plaintiff, who owns stock in a parent corporation, to bring a double derivative action as a shareholder of the parent against directors of a subsidiary corporation for the directors' breaches of fiduciary duty that results in harm to the subsidiary and, indirectly, to the parent as the subsidiary's only or majority shareholder. *See id.* at 282–83.

44. Here, Plaintiff's description of her attempt to bring derivative claims on behalf of HP as a double derivative claim exhibits a misunderstanding of the nature of double derivative claims. A "double derivative" claim by a shareholder of a parent

company on behalf of the parent company – i.e., the company in which the plaintiff is actually a shareholder – is brought against the directors of the subsidiary for damages incurred by the parent company as a result of injury to the parent's value caused by injury to the subsidiary. Here, however, Plaintiff attempts to assert derivative claims on behalf of HP, the subsidiary, a company in which she is not a member, in addition to derivative claims on behalf of Hyde-HP.

45. "[A] court has inherent power to inquire into, and determine, whether it has jurisdiction and to dismiss an action *ex mero motu* when subject matter jurisdiction is lacking." *Reece v. Forga*, 138 N.C. App. 703, 704, 531 S.E.2d 881, 882 (2000). Because Plaintiff is not a member of HP, the Court concludes that Plaintiff lacks standing to assert derivative claims on behalf of HP. Because lack of standing defeats the Court's subject matter jurisdiction, the Court must dismiss Plaintiff's derivative claims asserted on behalf of HP with prejudice. *See Marriott v. Chatham Cty.*, 187 N.C. App. 491, 494, 654 S.E.2d 13, 16 (2007) ("Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction.").

46. Plaintiff's derivative claims brought on behalf of Hyde-HP, however, are a different matter. Plaintiff alleges that she is a 50% member of Hyde-HP, that she made a written demand on Hyde-HP to take suitable action, and that such demand was rejected. Thus, under N.C. Gen. Stat. § 57D-8-01, and assuming her allegations regarding her demand to be true, Plaintiff has standing to bring derivative claims on behalf of Hyde-HP.

47. Nonetheless, the Powells' Supplemental Brief puts at issue the question of whether Plaintiff may bring a derivative action on behalf of Hyde-HP against the Powells for the Powells' alleged wrongful actions that injured *HP*, the subsidiary LLC in which Hyde-HP is a 75% member. Such a claim would be in the nature of a double derivative claim. *See Lambrecht*, 3 A.3d at 282.

48. Our appellate courts have not explicitly addressed whether a plaintiff may bring a double derivative claim under North Carolina law. The Court of Appeals, in *Hayes*, dealt with individual claims in a factual scenario not unlike Plaintiff's claims here. The Court in *Hayes* was not, however, called upon to decide whether a double derivative claim exists under North Carolina law. Absent guidance from the North Carolina appellate courts, this Court may look to, but is not controlled by, Delaware law on the subject. *See First Union Corp. v. Suntrust Banks, Inc.*, 2001 NCBC LEXIS 7, at *31 (N.C. Super. Ct. Aug. 10, 2001) ("North Carolina courts have frequently looked to Delaware for guidance [on matters of corporate law] because of the special expertise and body of case law developed in the Delaware Chancery Court and the Delaware Supreme Court.").

49. As noted above, Delaware courts recognize the legitimacy of a claim brought by a shareholder of a parent company to enforce a claim belonging to a subsidiary, in certain instances, so long as that subsidiary is wholly owned or majority controlled by the parent. *Lambrecht*, 3 A.3d at 282. Here, Plaintiff's Complaint, liberally construed, states claims against Hyde and the Powells that would qualify as double derivative claims on behalf of Hyde-HP under Delaware law.

50.     Specifically, Plaintiff alleges that Hyde breached his fiduciary duty to HP by unilaterally agreeing on behalf of HP to lower monthly rent owed by EZ, resulting in a loss of income to Hyde-HP, as a 75% member in HP. (*See* Compl. ¶¶ 39, 43.) Plaintiff also alleges that Hyde and the Powells breached their fiduciary duties to HP in their allocation of the purchase price between HP and EZ, which allegedly benefitted EZ at HP's expense. (*See* Compl. ¶¶ 46, 48, 49.) These allegations, among others, would, the Court believes, properly state a double derivative claim under Delaware law.

51.     In the absence of explicit guidance from North Carolina appellate courts regarding the validity of double derivative claims in North Carolina, the Court declines to dismiss such claims at this stage of the litigation, either on its own motion under Rule 12(h)(3), or on the Powells' purported Rule 12(b)(1) Motion set forth in the Powells' Supplemental Brief. Accordingly, to the extent the Powells move for dismissal of such claims in their Supplemental Brief, the Court concludes that the Powells' Motion should be denied, without prejudice to any of the Defendants' right to challenge the viability of Plaintiff's double derivative claim at the dispositive motion stage of this litigation.

## VII.   PLAINTIFF'S INDIVIDUAL CLAIMS

52.     Both Hyde's Motion and the Powells' Motion seek dismissal of Plaintiff's claims asserted in Plaintiff's individual capacity rather than derivatively. Plaintiff asserts individual claims against Hyde and the Powells for breach of contract, breach of fiduciary duty, constructive fraud, conversion, unjust enrichment, punitive

damages, unfair and deceptive trade practices, and accounting. Each claim is based on Hyde's and the Powells' alleged breach of their fiduciary duties to the LLCs by their alleged wrongful allocation of the EZ purchase price among the various LLCs and, as to Hyde specifically, for his alleged unilateral reduction of the rent EZ paid HP each month.

53. Under North Carolina law, the rule is that "[s]hareholders . . . of corporations generally may not bring individual actions to recover what they consider their share of the damages suffered by the corporation." *Hayes*, 2016 N.C. App. LEXIS 819, at *6 (quoting *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 660, 488, S.E.2d 215, 220–21 (1997)). Despite this general rule, however,

> a "shareholder may maintain an individual action against a third party for an injury that directly affects the shareholder, even if the corporation also has a cause of action arising from the same wrong," under two circumstances: (1) where "the wrongdoer owed [the shareholder] a special duty[,]" and (2) where the shareholder suffered a personal injury—one that is "separate and distinct from the injury sustained by the other shareholders or the corporation itself."

*Id.* at *8 (quoting *Barger*, 346 N.C. at 659, 488 S.E.2d at 219). This rule, and its exceptions, are equally applicable in the LLC context. *See, e.g.*, *SCA-Blue Ridge, LLC v. WakeMed*, 2016 NCBC LEXIS 2 (N.C. Super. Ct. Jan. 4, 2016).

A. <u>Hyde's Motion</u>

54. For Plaintiff to maintain individual claims against Hyde, she must allege either (1) that Hyde owed Plaintiff a special duty, or (2) that Plaintiff suffered a personal injury separate and distinct from the injury suffered by the LLCs. Hyde argues that Plaintiff has not alleged facts sufficient to establish either a special duty

or unique personal injury and that, therefore, Plaintiff's individual claims against them should be dismissed.

55. As to the special duty exception, Plaintiff alleges, among other things, that she and Hyde, each a 50% co-owner of Hyde-HP, are siblings, (Compl. ¶ 15), and that "Hyde made every effort to exclude Plaintiff from the operation of the LLCs and withheld information from her about both LLCs," (Compl. ¶ 25). Plaintiff argues that these allegations are sufficient to establish that Hyde owed Plaintiff a special duty.

56. The special duty that is required for a plaintiff to maintain an individual action

> may arise from contract or otherwise. To support the right to an individual lawsuit, the duty must be one that the alleged wrongdoer owed directly to the shareholder as an individual. The existence of a special duty thus would be established by facts showing that defendants owed a duty to plaintiffs that was personal to plaintiffs as shareholders and was separate and distinct from the duty defendants owed the corporation. A special duty therefore has been found when the wrongful actions of a party induced an individual to become a shareholder; when a party violated its fiduciary duty to the shareholder; when the party performed individualized services directly for the shareholder; and when a party undertook to advise shareholders independently of the corporation.

*Hayes*, 2016 N.C. App. LEXIS 819, at \*10–11 (quoting *Barger*, 346 N.C. at 659, 488 S.E.2d at 220). Although *Barger* did not purport to identify an exhaustive list, the Court of Appeals has concluded that "the special duty exception clearly requires an articulation of some duty owed to a plaintiff that is distinct from the general fiduciary duties directors and officers owe to the corporation." *Id.* at \*11.

57. Plaintiff contends that, in addition to the list articulated in *Barger*, a familial relationship standing alone satisfies the special duty exception. In *Poulos v.*

*Poulos*, 2015 NCBC LEXIS 58 (N.C. Super. Ct. June 2, 2015), for example, this Court (McGuire, J.) held that an allegation that plaintiff and defendant were, in addition to each being 50% members in an LLC, husband and wife was a "sufficient allegation of a 'special relationship'" to survive a motion to dismiss. *Id.* at *9.

58. The Court concludes that *Poulos* does not control in these circumstances. Here, the relationship between Plaintiff and Hyde is one of brother and sister, rather than husband and wife, the latter being "the most confidential of all relationships." *Link v. Link*, 278 N.C. 181, 193, 179 S.E.2d 697, 704 (1971). Moreover, in *Poulos*, the plaintiff alleged that she relied on her husband's representations that certain alleged fraudulent transfers were for estate planning purposes, and that she placed actual trust and confidence in her husband to properly engage in the business of the LLCs in her best interests.

59. Here, however, there are no such allegations. While the relationship described in the Complaint is a strained one, there is no allegation that the relationship between Plaintiff and Hyde, although familial, was anything more than that of co-members of an LLC. The Court declines to hold that a sibling relationship combined with 50% ownership of an LLC, without more, creates a special duty sufficient to bypass the general rule in North Carolina that a member may not bring an individual action to recover damages suffered by the LLC. *See, e.g., Maurer v. Maurer*, 2013 NCBC LEXIS 41, at *13 (Aug. 23, 2013) (declining to recognize special duty where plaintiff and defendant were former spouses and 50/50 co-owners of corporation).

60.    Plaintiff's allegations do not otherwise satisfy the special duty exception. Plaintiff has not alleged that Hyde induced Plaintiff to become a member of Hyde-HP, that Hyde performed individualized services directly for Plaintiff, or that Hyde undertook to advise Plaintiff independently of the LLC. *See Barger*, 346 N.C. at 659, 488 S.E.2d at 220.

61.    In addition, Hyde plainly does not owe Plaintiff a fiduciary duty simply because they are both members of Hyde-HP. "Members of a limited liability company . . . do not owe a fiduciary to each other . . . ." *Kaplan v. O.K. Techs., L.L.C.*, 196 N.C. App. 469, 473, 675 S.E.2d 133, 137 (2009). Neither does Hyde owe Plaintiff a fiduciary duty as a result of his status as the manager of Hyde-HP. *See, e.g.*, *id.* ("[M]anagers of a limited liability company also owe a fiduciary duty to the company, and not to individual members."). Although a controlling member may owe a fiduciary duty to a minority member, *see id.*, here, Plaintiff alleges that she and Hyde are both 50% members of Hyde-HP. Thus, Plaintiff is not a minority member, and Hyde is not a controlling member. *See Allen v. Ferrera*, 141 N.C. App. 284, 291, 540 S.E.2d 761, 766 (2000) ("[P]laintiff was a fifty percent owner . . . and hence was not a minority shareholder.").

62.    The Court specifically addresses Plaintiff's claim against Hyde for breach of the Hyde-HP Operating Agreement. As noted above, a special duty "may arise from contract or otherwise." *Hayes*, 2016 N.C. App. LEXIS 819, at *10 (quoting *Barger*, 346 N.C. at 659, 488 S.E.2d at 220). However, *Hayes* and *Barger* are also clear that "the duty must be one that the alleged wrongdoer owed directly to the

shareholder as an individual." *Id.* (quoting *Barger*, 346 N.C. at 659, 488 S.E.2d at 220). Here, Plaintiff alleges, specifically in regard to her breach of contract claim against Hyde, that

> Defendants have breached their obligations, duties, and responsibilities under the . . . Hyde-HP [Operating Agreement], particularly the duties assigned to managers in the operating agreements. In particular, Defendants breached the duties set forth in the . . . Hyde-HP [Operating Agreement] not to engage in acts or omissions that were clearly in conflict with the interests of the LLCs and . . . engage in transactions from which a manager derives an improper personal benefit.

(Compl. ¶¶ 66, 67.)

63. These alleged duties are neither different from the usual fiduciary duties owed by a manager of an LLC, *see* N.C. Gen. Stat. § 57D-3-21, nor special to Plaintiff individually, rather than duties owed to the LLC as a matter of contract. Accordingly, the Court concludes that the Hyde-HP Operating Agreement, itself, is not sufficient to create a special duty owed by Hyde specifically to Plaintiff. For these same reasons, Plaintiff's individual claim for breach of the Hyde-HP Operating Agreement also fails.

64. Like *Hayes*, "this case does not present a situation where the recognition of a special duty would be proper or justified." *Hayes*, 2016 N.C. App. LEXIS 819, at *14. For these reasons, the Court concludes that Plaintiff has failed to allege that Hyde owed any special duty to Plaintiff.

65. Turning next to the special injury exception, to proceed under this exception, "a plaintiff must allege an injury 'peculiar and personal' to itself as a shareholder." *Id.* (quoting *Barger*, 346 N.C. at 659, 488 S.E.2d at 220). "Specifically, a plaintiff must show that its particular injury was 'separate and distinct from the

injury sustained by the other shareholders or the corporation itself.'" *Id.* (quoting *Barger*, 346 N.C. at 659, 488 S.E.2d at 219).

66. Plaintiff's Complaint contains numerous allegations that, as a result of Hyde's wrongdoing, "HP, Hyde-HP, and Plaintiff have been damaged." (*See, e.g.*, Compl. ¶¶ 70, 81, 94, 99, 106, 110.) Completely absent from Plaintiff's Complaint, however, is any allegation that Plaintiff suffered a "peculiar and personal" injury, apart from that suffered by Hyde-HP.

67. Plaintiff contends that the allegations that (1) Plaintiff was not a member of EZ, and (2) Defendants engaged in a series of transactions that benefitted EZ to the detriment of Hyde-HP, HP, and Plaintiff are sufficient to establish a special injury suffered by Plaintiff. The Court disagrees. The harm allegedly suffered by Plaintiff as a result of the alleged wrongful allocation of the purchase price by Hyde and the Powells among EZ, Hyde-HP, and HP is exactly the same harm that Plaintiff alleges was suffered by the LLCs. Plaintiff has failed to allege any injury she suffered that is separate and distinct from the injury suffered by Hyde-HP. *See, e.g.*, *Barger*, 346 N.C. at 658, 488 S.E.2d at 219 ("[S]hareholders cannot pursue individual causes of action against third parties for wrongs or injuries to the corporation that result in the diminution or destruction of the value of their stock.").

68. In sum, Plaintiff's Complaint does not allege facts sufficient to establish either of the exceptions outlined in *Barger* and followed in *Hayes*. For these reasons, the Court concludes that Plaintiff's individual claims against Hyde should be dismissed.

B.    The Powells' Motion

69.    Plaintiff's individual claims against the Powells fail for the same reasons the same claims fail against Hyde.  Plaintiff's Complaint does not allege facts sufficient to establish either of the *Barger* exceptions.  Accordingly, for the same reasons explained above in connection with Hyde's Motion, the Court concludes that Plaintiff's individual claims against the Powells should be dismissed.

C.    Dismissal With or Without Prejudice

70.    Plaintiff requests that any dismissal of her individual claims be without prejudice.  Plaintiff contends that, because information concerning the operation of Hyde-HP was withheld from her, her ability to allege facts are necessarily limited to what she currently knows or believes to be true, and that if evidence is uncovered during discovery that would support individual claims, Plaintiff should be allowed to amend the pleadings and assert those claims.

71.    "The decision to dismiss an action with or without prejudice is in the discretion of the trial court . . . ." *First Fed. Bank v. Aldridge*, 230 N.C. App. 187, 191, 749 S.E.2d 289, 292 (2013).  The Court concludes, in the exercise of its discretion, that dismissal of Plaintiff's individual claims, except for any such claims asserted out of her alleged status as a member of HP, at this stage should be without prejudice to Plaintiff's right to attempt to reassert such claims by way of a motion to amend her Complaint in the event discovery uncovers facts sufficient to establish one of the two *Barger* exceptions discussed above, or that Plaintiff is otherwise entitled to bring individual claims against Hyde and/or the Powells.

## VIII. CONCLUSION

72.    For the foregoing reasons, the Court hereby **GRANTS** Hyde's Motion, **GRANTS in part** the Powells' Motion, and **DISMISSES without prejudice** Plaintiff's claims asserted in her individual capacity against Hyde and the Powells, except for any claims asserted out of her alleged status as a member of HP, which are dismissed with prejudice.  The Court further, *sua sponte*, **DISMISSES with prejudice** Plaintiff's claims asserted derivatively on behalf of HP against Hyde and the Powells.   As a result of the Court's rulings as set forth herein, all individual claims against Hyde and the Powells are dismissed.  Plaintiff's derivative claims against Hyde and the Powells on behalf of Hyde-HP survive the Motions.

**SO ORDERED**, this the 4th day of October, 2016.


/s/ Michael L. Robinson
_____
Michael L. Robinson
Special Superior Court Judge
 for Complex Business Cases